UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KRISTOPHER KANABLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:20-cv-00633-JMS-MG |
| | ) |
| RAJOLI, | ) |
| PEARISON, | ) |
| HARTZ, | ) |
| WHITE, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT RAJOLI AND PEARISON'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kristopher Kanable, an Indiana prisoner, filed this civil rights action seeking money damages. He alleges that he was injured by Indiana Department of Correction officers and subsequently denied constitutionally adequate medical care while incarcerated at Wabash Valley Correctional Facility. Relevant to this motion, are Mr. Kanable's claims that Chelsey Pearison, RMA, and Naveen Rajoli, M.D., failed to adequately treat his injuries. These medical defendants now seek summary judgment on Mr. Kanable's claims. They argue that Dr. Rajoli provided adequate treatment and that Ms. Pearison was not personally involved in Mr. Kanable's care. For the reasons explained below, the motion for summary judgment, dkt. [78], is **GRANTED.**

**I. Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021); *see also*

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (noting that a court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. "Material facts" are those that might affect the outcome of the suit. *Id.*

"At summary judgment a party 'must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) and (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322-23. Additionally, "[a] party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." *See* S.D. Ind. L.R. 56-1.[1]

---

[1] Mr. Kanable states in his surreply that, "all of the medical defendants' statements of material fact are in dispute, no matter how hard they argue that they are not. The record in this case reveals that there is a genuine dispute of material fact and the evidence provided by the defendants prove it." Dkt. 102 at 6. But, a movant's statement supported by admissible evidence is accepted as true at summary judgment unless the non-movant shows that it is genuinely disputed by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1). In addition, a declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters asserted. Fed. R. Civ. P. 56(c)(4).

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Factual Background

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except to the extent that disputes of fact are noted.

At all times relevant to this lawsuit, Mr. Kanable was an inmate within the custody of the Indiana Department of Correction ("IDOC") and housed in segregated housing at the Wabash Valley Correctional Facility ("Wabash Valley"). Dkt. 1. At 1. Mr. Kanable has suffered from neck pain since at least June 2018, as a result of degenerative spinal changes and had active prescriptions for pain medication at all times relevant to this lawsuit. Dkt. 80-1 at ¶¶ 7, 9 and 12.

Dr. Rajoli was employed as a physician and Chelsey Pearison was employed as a registered medical assistance ("RMA") at Wabash Valley. Dkt. 80-1 at ¶2; Dkt. 80-2 at ¶2.

On May 5, 2020, officers used force against Mr. Kanable. As the officers fell to the ground with Mr. Kanable his "neck snapped loudly upon impact with the floor causing him severe immediate pain in his neck, face, and back." Dkt. 95 at 2.[2] Later in the day, Mr. Kanable was seen by nurse Tara Powers. Nurse Powers made the following report in Mr. Kanable's medical records:

---

[2] As explained in the Order Granting Defendant Hartz and Whites' Motion for summary judgment, dkt [111], video evidence of the use of force contradicts Mr. Kanable's version of the event. *See McCottrell v.*

3

> This nurse was called down to CCU after custody had to perform use of force on pt. Pt entered room on own accord without difficulty; speaking and laughing normally without signs of distress. Once this nurse took VS and began assessment pt then began to act pained and stiff. Pt states that the injury occurred because the pt stumbled forward while custody was attempting to secure pt and pt states they landed on the left side of their face at an awkward angle that was part on the wall and part on the ground. This nurse failed to see any signs of trauma anywhere on pt from the waist up. ROM in neck was limited and pt stated that when they took a deep breath or moved their neck too quickly they had a sharp pain posteriorly on the scapula area. Lungs and heart sounds were WNL, and facial structures were not tender to palpation. Neuro checks were WNL. Pt did not seem to be under any distress at the situation. This nurse educated pt on signs to watch out for and to fill out HCRF if the problems worsened or did not resolve. Pt voiced understanding.

Dkt. 80-3 at 3.

Mr. Kanable submitted a HCRF (#420379) complaining of severe neck pain and migraines from the use of force incident and was scheduled to be seen in nursing on May 9, 2020. Dkt. 80-3 at 55. The medical record reflects that Nurse McDonald saw Mr. Kanable, but he refused to have all vitals measured, refused the appointment, and signed a refusal form. Dkt. 80-3 at 5-6.

Dr. Rajoli saw Mr. Kanable on May 12, 2020. Dkt. 80-3 at 7. Before Mr. Kanable "walked in the medical room, [he] heard Nurse Chelsey Pearison tell Naveen Rajoli M.D. that if it was not for [his] previous behavior, [he] wouldn't be hurt and that Dr. Naveen Rajoli should not provide [him] care." Dkt. 96 at ¶ 7. The medical record reflects that Mr. Kanable complained of musculoskeletal pain. Regarding that pain, Dr. Rajoli reported:

> Severity level is mild-moderate. It occurs intermittently and is fluctuating. There is no radiation. The pain is aching and dull. Context: there is no injury. The pain is relieved by pain/RX meds and mobility. There are no associated symptoms. ADLs and Functional limitations were reviewed.

---

*White*, 933 F.3d 651, 661 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). In resolving the medical defendants' motion for summary judgment, however, what matters is the information the medical defendants had available when treating Mr. Kanable and how they responded to his subjective complaints of pain.

Dkt. 80-3 at 7.[3] Mr. Kanable was able to perform all his activities of daily living ("ADL"). Mr. Kanable had active prescriptions for Tylenol and Lamictal at this time, and Dr. Rajoli administered a Toradol injection[4] for the acute pain resulting from the use of force. Dr. Rajoli also advised Mr. Kanable on stretching exercises to perform. Dkt. 80-1 at ¶ 7; Dkt. 80-3 at 7-9.

Mr. Kanable submitted a HCRF (#482144) on May 16, 2020, complaining that he was still having a lot of pain in his neck, and was seen at nursing sick call on May 20, 2020. He was referred to see a provider. Dkt. 80-3 at p. 54. The next day, he submitted another HCRF (#482193) for neck pain and was again referred to see a doctor. Dkt. 96 at ¶ 11. An additional HCRF (#482196) complaining of neck pain that shoots down the back and into the head was submitted on May 19, 2020, and referred to the doctor. *Id.* at ¶ 12. Mr. Kanable followed up again by filing a HCRF (#419935) complaining of severe neck pain and stating that he had been referred to the doctor, but not seen. *Id.* at ¶ 13.

Dr. Rajoli saw Mr. Kanable on June 2, 2020. In this report, Dr. Rajoli again noted that the problem was musculoskeletal pain. He provided the following:

> Severity level is mild-moderate. It occurs occasionally and is fluctuating. Location: (Neck). The pain radiates to the back. The pain is aching and dull. Context: there is an injury. The pain is aggravated by descending stairs, movement and pushing. The pain is relieved by pain/RX meds, mobility and rest. There are no associated symptoms. Hand Dominance: right. ADLs and Functional limitations were reviewed.

---

[3] Mr. Kanable disputes the statement: "there is no injury." Perhaps this was a typographical error, or perhaps, Dr. Rajoli meant that he could not see the injury. But this statement does not create a material fact in dispute because the evidence reflects that Dr. Rajoli understood that Mr. Kanable was requesting treatment for musculoskeletal pain and that he offered treatment for that pain regardless of whether the pain was caused by an injury.
[4] Mr. Kanable asserts without citation to admissible evidence that the shot provides no more than 24 hours of relief. Dkt. 102 at p. 2.

Dkt. 80-3 at p. 12. Mr. Kanable still had active prescriptions for Tylenol and Lamictal for pain. Mr. Kanable insisted that he get a radiologic diagnosis, but Dr. Rajoli advised him that there was no clinical evidence on exam that further radiologic testing was needed. Dr. Rajoli also noted that custody staff reported Mr. Kanable had been hitting his head against the wall and door of his cell at night. Dr. Rajoli asked Mr. Kanable to stop doing this. Dkt. 80-1 at ¶ 9; dkt. 80-3 at 14. According to Mr. Kanable, Dr. Rajoli told him that he was fine and there was nothing more to be done. Dkt. 96 at ¶ 14.[5]

Mr. Kanable submitted three HCRFs (#467843, #467847, 419942) after June 12th complaining of neck, head, and back pain, limited neck movement, migraines, and blurred vision. Dkt. 96 at ¶¶ 15, 17, 18. He was seen in nursing on June 14, 2020. Dkt. 80-3 at 16. Mr. Kanable reported the pain medications were not helping. Nursing staff referred Mr. Kanable to see a provider. Dkt. 80-3 at 18; dkt. 96 at ¶¶ 16, 18.

Mr. Kanable was scheduled to see a provider on June 22, 2020, but no provider was onsite, so Mr. Kanable was rescheduled. Dkt. 80-1 at ¶ 11; dkt. 80-3 at 20; dkt. 96 at ¶ 19.

Mr. Kanable filed another HCRF (#45633) on June 25, 2020, complaining of filing multiple HCRF an not receiving any care leaving him in pain and not able to complete everyday tasks. Dkt. 96 at ¶ 20.

Mr. Kanable saw Dr. Byrd, another provider at Wabash Valley, on June 26, 2020. Dr. Byrd reported that the problem was neck pain and provided the following information:

> Pt seen in MD sick call with c/o neck pain. Duration of neck pain is nearly 2 yrs. Patient believes neck pain is related to being slammed on his head by IDOC staff in August 2018. Review of St. Vincent Anderson records reveals degenerative changes

---

[5] Mr. Kanable takes issue with the fact that Dr. Rajoli reported that he had an injury when he previously stated that he was not injured. Dkt. 102 at p. 3. But again, this characterization did not impact the treatment provided for Mr. Kanable's complaints and it does not create a material fact in dispute.

> at C5-6 and C6-7 that would have been present prior to altercation with IDOC staff in August 2018. He [notes] on 5/5/2020 he was again in altercation with IDOC staff and slammed to the ground. This time his neck was hyperextended to the right as left side of his head hit the base of the wall and caused hyperextension of his neck. Since that time he has had daily neck pain and headaches. Pt denies upper extremity numbness, weakness, or paresthesias. No recent injury. Previous tx includes APAP for current symptoms. He would like prednisone if possible. He thinks it will also help with TMJ Syndrome of R TMJ as it nearly resolved it following first round of prednisone for TMJ syndrome.

Dkt. 80-3 at 22.  Dr. Byrd ordered a Prednisone taper and x-rays of Mr. Kanable spine. Dkt. 80-1 at ¶ 12; dkt. 80-3 at 23-24.[6]

The x-ray of Mr. Kanable's spine was read on July 1, 2020. It revealed no bony abnormality, but mild to moderate degenerative disc disease. Dkt. 80-3 at 49.

Dr. Byrd administered a Toradol injection to Mr. Kanable on July 17, 2020, for his neck pain. Dkt. 80-1 at ¶ 14; dkt. 80-3 at 25.

Dr. Byrd saw Mr. Kanable on August 3, 2020. Mr. Kanable complained of ongoing headaches and back pain. Mr. Kanable was scheduled to receive another Toradol injection, and a prescription was given for Topamax. Dkt. 80-1 at ¶ 15; Dkt. 80-3 at 26-30.

Mr. Kanable continued to complain of ongoing neck and back pain in August and October before filing this action on November 27, 2020. *See* HCRF (#472939, #440141, #472992, #472983); Dkt. 96 at ¶¶26-29.[7]

---

[6] Mr. Kanable argues that Dr. Byrd "disputed Dr. Rajoli's report." Dkt. 102 at 2. But there is no evidence that the Dr. Byrd disagreed with Dr. Rajoli's course of treatment on May 12, 2020.

[7] Additional medical history has been provided by the parties, but the Court's review is limited to the time period preceding the filing of the complaint. See Fed. R. Civ. P. 15(d); *Chicago Regional Council of Carpenters v. Village of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011) ("Normally, a complaint can seek relief only for events that have already occurred. . . Before the complaint may be broadened to encompass subsequent events, the plaintiff must move to supplement it . . .the district court has substantial discretion either to permit or deny such a motion.").

Dr. Rajoli testified that he is aware that Mr. Kanable believes the pain medications he has been prescribed have been ineffective and he has requested to be prescribed Tramadol. While Tramadol can be an effective pain medication, it is not typically recommended as a long-term or chronic prescription, unless the patient has a serious or significant abnormality, and all other options are exhausted. Dkt. 80-1 at ¶ 26. Dr. Rajoli has seen no evidence to suggest that Mr. Kanable has a serious or significant abnormality requiring a prescription for Tramadol. *Id.*

Dr. Rajoli's goal for pain management is not to achieve zero pain, but to use pain medication, as well as distraction techniques, passive stretching, and range of movement exercises to achieve a tolerable balance. Titrating pain medication up only makes the pain threshold higher, meaning the patient will begin to feel pain at a much higher level of medication for the same nature of pain. *Id.* at ¶ 27. 29. It is Dr. Rajoli's professional medical opinion that Mr. Kanable was not in need of any different medical treatment than what was provided to him. *Id.* at ¶ 28.

As an RMA, Chelsey Pearison does not have the legal authority to diagnose a patient, order specific medical treatment, or direct a physician's course of action. Dkt. 80-2 at ¶ 5. Ms. Pearison was not involved in any of the decision-making processes regarding care and treatment of Mr. Kanable. *Id.* at ¶ 4.

### III. Discussion

Mr. Kanable argues that the medical defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The medical defendants dispute this claim and seek judgment in their favor as a matter of law. Dr. Rajoli argues that he provided appropriate care and treatment for Mr. Kanable's complains of pain and that Ms. Pearison was not personally involved in Mr. Kanable's care. Dkt. 79 at p. 9.

**A.     Deliberate Indifference Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the medical defendants do not dispute that Mr. Kanable's medical needs were serious. Dkt. 98 at 1-2. To survive summary judgment then, Mr. Kanable must show that Defendants acted with deliberate indifference—that is, that he or she consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). "Several circumstances can permit a jury to reasonably infer deliberate indifference, such as denial of medical treatment altogether, delay of medical care, continued ineffective treatment, a substantial departure from accepted professional judgment, practice, or

9

standards, ignoring an obvious risk, and refusing care because of cost." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (citations omitted).

With this framework in mind, the Court turns to Mr. Kanable's claims against the individual defendants.

### B. Dr. Rajoli

The medical defendants argue that Dr. Rajoli was not deliberately indifferent to Mr. Kanable's serious medical needs. Dkt. 79 at 9-10. In his surreply, Mr. Kanable asserts that Dr. Rajoli was deliberately indifferent because he refused to order x-rays, made a "false report of no injuries," and administered a shot that provides pain relief for no more than 24 hours. Dkt. 102 at p. 3. For the reasons explained below, no reasonable jury could conclude that Dr. Rajoli was deliberately indifferent to Mr. Kanable's complaints of musculoskeletal pain.

The record on summary judgment reflects that Mr. Kanable complained of neck and back pain well before the May 5th use of force incident and that he was already receiving treatment for these complaints when he was first evaluated by Dr. Rajoli. At that time, Mr. Kanable had active prescriptions for Tylenol and Lamictal to provide relief for his degenerative spinal changes. Dr. Rajoli's examination led him to conclude in his professional opinion that Mr. Kanable lacked an acute injury, had benign clinical exam findings, and was able to perform all of his activities of daily living independently, such that treatment with low-dosage pain medications, Toradol injections, passive stretching, and range of motion exercises was appropriate. The decision to not prescribe Mr. Kanable Tramadol is a decision that reflects professional judgment, practice, and standards and Mr. Kanable has not come forward with any evidence that he required any different medical treatment than that which was provided by Dr. Rajoli. Dkt. 98 at 3-4.

Mr. Kanable argues that there is a material fact in dispute because his declaration directly contradicts the medical defendants evidence regarding "what medical treatment was used, when it was used, why and how it was used." Dkt. 95 at 3. But the Court finds otherwise. Mr. Kanable's response brief did not adequately challenge the accuracy of his medical records, which is the primary source of the defendants' facts. *See* Local Rule 56-1(e) (stating that a party must support each fact the party asserts in a brief with a specific citation to admissible evidence in the record).

Mr. Kanable's concerns with the fact that Dr. Rajoli reported after their first encounter that he did not have an injury but then injected him with pain medication does not reflect deliberate indifference. Dkt. 97 at 1. Instead, these facts reflect that Dr. Rajoli provided Mr. Kanable with treatment for his subjective complaints of pain, even in the absence of evidence of an acute physical injury. Dkt. 98 at 2.

The Eighth Amendment only requires that Mr. Kanable receive medical care that reflects professional judgment, practice, or standards. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Moreover, "a medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). Here, Mr. Kanable began seeing Dr. Byrd after his first two encounters with Dr. Rajoli, and Dr. Byrd continued with the same course of treatment Dr. Rajoli had been applying. Mr. Kanable points out that Dr. Byrd also requested x-rays, but there is no evidence that these x-rays changed the course of treatment. Instead, they simply confirmed Mr. Kanable had degenerative disk disease.

Mr. Kanable has not and cannot show that Dr. Rajoli deliberately disregarded a substantial risk of harm. Thus, Dr. Rajoli was not deliberately indifferent, and is entitled to summary judgment in his favor.

11

### C. Ms. Pearison

Mr. Kanable has sued Ms. Pearison because she allegedly told Dr. Rajoli to withhold treatment because if it was not for Mr. Kanable's behavior he wouldn't be hurt. The defendants argue that Chelsey Pearison is entitled to judgment as a matter of law because she was not personally involved in the alleged constitutional deprivation. Dkt. 79 at 11.

"Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). There is no evidence that Ms. Pearison was involved in providing any care to Mr. Kanable. The undisputed evidence demonstrates that Ms. Pearison, as an RMA, did not have the legal authority to diagnose a patient, order specific medical treatment, or direct a physician's course of action, and was not involved in the decision-making processes regarding Mr. Kanable's care and treatment.

Even if Ms. Pearison pressured Dr. Rajoli to decline care, the summary judgment record reflects that her efforts were not successful. There is no evidence that Dr. Rajoli pursued an ineffective course of treatment at Ms. Pearison's suggestion. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.' "); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

In the absence of any evidence of personal involvement in Mr. Kanable's care or any injury as a result of her statements to Dr. Rajoli, Ms. Pearison is entitled to summary judgment in her favor.

## IV. State Law Claims

During the review of the Defendants' motions for summary judgment, the Court identified state law claims alleged in the complaint that were not identified in the screening order. The complaint states, "Plaintiff brings supplemental state law claims for battery and medical malpractice, gross negligence, and recklessness." Dkt. 1 at p. 2. While the Order Screening Complaint, dkt. 18, did not acknowledge these claims, Mr. Kanable was instructed that if he "believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have through May 7, 2021, to identify those claims." Dkt. 18 at p. 2-3. Mr. Kanable did not bring these overlooked claims to the Court's attention.

The Court now declines to exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367. For the reasons that follow, the Court relinquishes supplemental jurisdiction over these claims and dismisses them without prejudice.

The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life*

*Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The relevant factors weigh in favor of the Court following the "usual practice" in the Seventh Circuit and relinquishing supplemental jurisdiction. *Groce*, 193 F.3d at 501. Neither the Court nor the parties have expended significant resources on the pending state-law claims. Finally, as always, comity favors allowing state courts to decide issues of state law. Moreover, none of the exceptions to the usual practice of relinquishing supplemental jurisdiction apply here. The statute of limitations will not have run on Mr. Kanable's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). Substantial resources have not been expended on these claims. Nor is it absolutely clear how the claims should be decided because they have not been developed.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims.

## V. Conclusion

For the reasons explained above, Dr. Rajoli and Ms. Pearison's motion for summary judgment, dkt. [78], is **GRANTED.** The undisputed summary judgment record reflects that Mr. Kanable's Eighth Amendment rights were not violated.

Final judgment consistent with this Order and the Order Granting Defendants Hartz and Whites' Motion for summary judgment shall now issue.

**IT IS SO ORDERED.**

Date: 3/23/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KRISTOPHER KANABLE
150495
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
Stoll Keenon Ogden PLLC
rachel.johnson@skofirm.com

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com